Good morning, Your Honors. My name is Rick Jeffery, and may I please the Court? Can you speak a little louder, please? Certainly. Maybe, can that go up? Can you turn up the volume? Does the podium raise at all? No. Oh, okay. Is this better? Yes. Maybe pull up the other one, too, the other microphone. Okay. My name is Rick Jeffery. I will be speaking for seven minutes. We'd like to reserve three minutes for rebuttal. Let's start the clock all over. Which my colleague, Justin Martin, will be taking. All right. Thank you. This Court should reverse and remand this case for two reasons. First, the record compels the conclusion that our client, Darlin Mejia Lopez, was raped on account of his sexual orientation. Second, Petitioner and Respondent have agreed that this case needs to be remanded for reconsideration of the Conventions Against Torture claim under the Ordinary Remand Rule. Turning to the nexus issue, here the record compels the conclusion that our client was raped on account of his sexual orientation. Applying this Court's recent decision in Bringus-Rodriguez, there are two- Well, why don't you tell us what evidence he did present on that issue? It does have to be compelling, and I'm not really seeing that. So why don't you tell us your best evidence on that? Your Honor, the record compels the conclusion that he was raped on account of his sexual orientation for two reasons. First, we know that his rapists were attracted to him. Second, we know that Darlin knew that he was gay. Third, Darlin testified that he was afraid of discrimination and abuse on account of his sexual orientation. And fourth, we know that this is not pedophilia because these individuals pursued Darlin well into adulthood, into his 20s, as a matter of fact. But so what bothered me was that the lawyer that he had at his hearing didn't really question Mejia about the motivations for his attack. So, you know, in Bringus, we had a lot of testimony where it was quite evident that the motivation for the attack was on account of the boy's sexual orientation. And we just don't have any – there was no questioning about it. I mean, was the lawyer just performing deficiently because of that? We certainly think so, Your Honor. Additionally, though, the – so for instance, on page 208 of our record, the lawyer asked Darlin what was happening – what his attackers were saying to him as he was being raped. And the judge actually interrupted that question and went on to other matters that were unrelated to the issue of the motivation of the attackers. And throughout the record, that pattern repeats as well. Also, it seemed as though your client was not comfortable directly discussing it. I mean, it wasn't – he didn't use language that directly attributed the motive. I agree, Your Honor. And I think that that was a combination of poor representation and deficient questioning. That said, our client did say in his pro se BIA brief that the – that he was raped on account of his sexual orientation. And he was deemed credible, right? He was, Your Honor. We're not looking at IAC here, though, right? No, Your Honor. But he did return back home to the country when – after the rape to help his mom when she was sick, right? That's correct. And how long was he there? Very briefly, Your Honor. I believe it was less than a month. And that was after he filed with the – or after he filed this notary request that he says was abandoned by the attorney. Is that correct? We're not sure whether or not it was an attorney. He calls this individual a notario. So it may not even have been someone that was licensed to file an application for him. And is the only piece of evidence in the record that that occurred? Does that come from him? That does come from him. Okay. And then there's a long number of years until he follows up on that, right? That's true. He was deemed credible, though, Your Honor. So we do have to take his assertion that he was a victim of immigration consultancy fraud at its – Well, but that doesn't – but that's not the only inquiry that the court has to make, because he has to show a certain amount of diligence. And it was 12 years later, right? So that's – that the court could still say, okay, I believe you that a notario filed this, but 12 years you have some sort of responsibility to make sure that something's going on. You didn't. And so that, you know, that the bar then applies. Your Honor, Darlin also testified in his asylum application that he regularly followed up with and called this individual and was told that, in fact, the application was filed and accepted. So he might not have had a reason to continue to call over those past 12 years, having thought that the application was done. But his affidavit doesn't say he was calling in the 10th, 11th, 12th years, right? No, that's correct. That was right after – within a shorter period of time, right? It's not clear what the exact period of time is, Your Honor. Okay. He didn't put that in the affidavit? No, he did not. Okay. So you want a limiting instruction on the remand, and why is that? Well, Your Honor, our client was found credible, and remand should be limited only to the narrow issue of whether or not the rape qualifies as torture under the Conventions Against Torture. It's not an excuse – remand is not an excuse to relitigate. Well, but you're pushing a rock uphill in the first place, and then it's like you want your cake and eat it, too, besides. I mean, if you – So you probably – I mean, the thing is, there's a couple other reasons why we might want to remand this. We might want the agency to consider in the first instance the application of Bringus, Rodriguez, and the application of Barajas. And so, I mean, these are both relatively new cases that are very related to your client's case. And if we remanded under that, you wouldn't want us to limit it to the prior record. If you remanded it on those issues, no, you're right, Your Honor, we would not want those limited to the prior record. And did you want to give your co-counsel some time? Yes, Your Honor. Thank you so much. Okay. Thank you. Good morning, Your Honors. Good morning. May it please the Court. Good morning. Elizabeth Fitzgerald Sambu on behalf of Respondent, United States Attorney General. This is an immigration case involving a Honduran petitioner who filed an untimely application for asylum, withholding of removal, and protection under the Convention Against Torture. He suffered horrific treatment in Honduras from the ages of 12 to 16 when he was raped by two rapists over those period of years. But such treatment does not automatically render him eligible for asylum, withholding, and protection under the Convention Against Torture. All three of those applications have elements that must be met in order for the individual to qualify for those. Well, let's go right to it. You agree that it has to go back on CAT, right? Yes, correct, Your Honor. But we would actually not want it to be limited to only a finding of past torture because, as Your Honors know, in the CAT determination, it's forward-looking. So past torture does not necessarily, it doesn't create a presumption of future torture. It's only one factor in that consideration. So you want the open remand on CAT. Exactly, Your Honor. But now, since I think the briefing, there's been a case called, I think, Barajas-Romero. Yes. That talks about a reason standard that would apply to the withholding claim. Yes, correct, Your Honor. Has he met that one central reason standard? Do we have to remand on the, if we're going on the CAT already, do we have to go on the withholding too? No, Your Honor. Although that case does affect the nexus determination in the withholding application. Well, it lessens the standard. It lessens the standard on withholding. But the one central reason doesn't apply anymore, at least in this circuit. Correct, Your Honor. Withholding. Yes. So in the Barajas-Romero case, it distinguished the Zatino case, where this court applied the one central reason to a withholding analysis. And this case is similar to that, where both in the Zatino case and in this case, the agency found that there was no evidence whatsoever that there was nexus. So in such cases, they're not mixed motive cases. The agency just found that there was no evidence at all of nexus. So in those cases, it's sort of irrelevant whether it's the one central reason standard or whether it's the A reason standard for withholding that this court recently decided. Because regardless. Yeah, but if we're sending it back anyway, shouldn't the agency apply the two recent cases that pertain to this exact factual situation? Well, Your Honor, we would argue that that's not necessary because as in the Zatino case, there's no nexus at all. And then in the Bringus case. That's only if we, I mean, there are, there is evidence in the record from which the inferences could have been drawn. And the opposing counsel, I think, is correct, as I read the transcript too, that when he was asked the question, somehow, I mean, it seemed like the judge was uncomfortable letting the testimony go through. It just seemed, even reading it, I know you read it too, and then there also seemed to be some translation issues. There were attempts to get to the heart of the thing, and nobody ever got to the heart of the thing. Right. Our position is that that was his counsel before the immigration judge and that the counsel was not, he had the opportunity to ask the question. And there's nothing in the record showing that the IJ was biased or that there was a due process error. And indeed, even if there was a due process error, he was obligated to exhaust that to the board. So, and also— Was there any evidence that it was anything, that the motivation was anything other than sexual orientation? No, Your Honor. In this case, there's no evidence showing at all what his rapists were possibly motivated by. So that's why he failed to meet the— Doesn't the IJ have an obligation to develop the record? Yes, Your Honor. But his counsel is also responsible for asking why he believes that he was raped. And in this case, there just isn't any evidence. So it could be that there just was no evidence. You're a little bit talking past each other on this. Because when Judge Wardlaw said, isn't there basically, isn't there, aren't there, isn't there some evidence that that was the only reason that it happened? And you're saying, well, there's no evidence that that's why it happened. And so I guess what are we to make of the IJ's interpretation of Mr. Mejia's testimony that when he met his attackers, it was attraction for them, meant, I think the IJ said, meant that Mr. Mejia felt an attraction for them. Right. That's actually what we had argued in our brief. But it's true that it could mean either thing. It could mean that his rapists were attracted to him, or it could mean that he was attracted to them. But it's actually irrelevant. Because even if a rapist is attracted to the victim, that doesn't mean that they're raping them because of. We rejected that argument in Bringus. That's why my idea is that we have to, I wrote Bringus. So I know we rejected that idea. And I do think, I mean, we could decide it ourselves, or we could send it to the agency and have the agency apply Bringus. And normally that's what we do. Right. Well, if this court disagrees with our position and does want us to choose those two options, we would prefer to remand and have the board decide it in the first instance. But our position is that Bringus Rodriguez is very distinguishable from this case because on Bringus Rodriguez there was ample evidence that the attackers and the rapists referenced the fact that they believed that the petitioner was gay in that case and that they were attacking him for that reason. Whereas in this case the record is just devoid of any evidence showing that his attackers were aware of or even perceived that he was gay or of his sexual orientation. And we have no idea if his rapists were also raping other people. There's just no evidence that it was on account of the protected grounds. Is the only evidence of the government being unable or unwilling to control the action him going to the police officer on the one occasion? Well, the unable or unwilling portion was actually not what the agency relied on. Right. So basically this case is focused solely on the nexus determination. And although for the future persecution aspects, country conditions evidence were relevant, but the unable or unwilling prong that was at issue in the Bringus Rodriguez case is not the issue of this case. But when you're looking at whether or not there's a pervasive issue within the country, that is certainly going to be almost part and parcel of whether or not there is a control over that, right? Correct, Your Honor. And in this case the agency had country conditions evidence where they considered the fact the country conditions reports described that people who are gay or of sexual minorities, they are discriminated against in Honduras. But that doesn't, discrimination does not rise to the level of persecution. So in this case that's really what the agency was relying on when they found that he didn't show that it was more likely than not that he would be persecuted in Honduras, as opposed to just merely discriminated against. There was some discussion by counsel for the petitioner that his counsel should have done more, that there might be IAC, you know, ineffective assistance of counsel or whatever. We can't look at that, though, can we? I mean, we have to look at what's in the record. So is my understanding, just so I understand your position, is you're saying they had to put something in to show nexus and that there's nothing to show nexus? Correct, Your Honor, and if he believes that his counsel prejudiced him in doing so, the proper remedy for him would be to file a motion to reopen with the Board of Immigration Appeals alleging ineffective assistance of counsel against his prior counsel, who did not even ask him about nexus, or why his asylum application was untimely. And I also want to get to the issue that our position is that he failed to exhaust his asylum denial based on the one-year bar. So in this case he was pro se in his appeal to the board, and of course this court reviews pro se appeals liberally, but in this case he didn't challenge the time bar at all whatsoever in his appeal to the board. So our position is that he did not show that he exhausted that, and it was his burden to do so before the board. And so what about petitioner's angle that he was found to be credible when he said what happened? Doesn't matter to you. Doesn't matter if when he filed whatever he filed we take that as a given, but then there's still this delay of 12 years in presenting it or challenging it, right? Is that your position? It's true, and that's the only evidence that he presented to the immigration judge about why his asylum application was untimely. And in that case it was 11 to 12 years prior. He entered the United States in 1999 and testified that he only remained a few days. So it was during that short time period that he visited this notario. So even assuming it was a notario and it was fraud, it was his burden to, within those next 12 years, figure out what was going on. And in fact, in the Viridiana case that this court decided, that case also involved an ineffective assistance or a case where the counsel, there was a notario. Potential fraud. Exactly. And in that case, this court found that there was an exception because the petitioner called that notario five to six times over the course of nine months, and then when that wasn't effective, then found a real attorney and filed for asylum. And it was only three months late, and then included a declaration stating everything that had happened in her application to the immigration judge. So in those circumstances, this court found that an exception applied. Is it your position that when he went back to Honduras then that he abandoned that as well? Yes, that was actually not in the record, but that is correct, that that's the legal effect of when you depart the United States after you've applied for asylum. Do we know when he came back? Yes, but I see that my time is up, or close to up, so are there any further questions? It's up, but thank you very much, counsel. Good morning, Your Honors. Good morning. I would just like to make three brief points. Do you want to just say your name for the record? My name is Justin Martin on behalf of Mr. Mejia. First, there is evidence in the record that his attackers were aware of his sexual orientation. One of the attackers was, in fact, his teacher, and although that was testified by his brother, Mr. Mejia's testimony does in no way contradicts that testimony. He says that on AR-222 that he met them when he was going to school, so it's actually consistent with his brother's testimony. And further, he tried to report this to police, and there's nothing in the record that shows that police in Honduras just generally don't pursue reports of rape, but that they, in fact, would not pursue cases like his. And I think that the fair inference there is that he did outwardly show expressions of his sexual orientation in a way that made others aware. Second, turning to the I-589 form, the IJ never rejected the I-589 form. It actually ruled with a misapprehension of facts, ruling that he did not know that asylum exists when, clearly by his filing of the I-589 form, shows that he knew that asylum existed, and he provided the facts necessary to show why he was overcoming the money at bar. Here is some strange colloquy in this record, where the judge kept saying, well, you say you're a man, sir. I'm sorry to tell you that's facts of the case as far as I know, and then Lopez Mejia says, I am gay. You appear to be a man, he says, so I don't know what you're talking about. Please answer Mr. Alexander's question. It's very strange. Like, did he acknowledge his sexual orientation, or, I mean, the judge seemed to not, to be fairly confused as to that issue. Yes. Yeah, we completely agree. He does acknowledge his sexual orientation when they ask about when he was married, when he got married, he says that he knew he was gay. He says that he knew he was gay at the age of 10 as well, and we agree that the IJ didn't necessarily develop the record, and the statute that requires that makes no reference as to whether or not the individual has counsel or not. This duty to develop the record is independent of having counsel. And the last point I would like to make is that just that he did, in fact, exhaust his claim before the BIA. He spent a third of his brief speaking about asylum, which necessarily raised the procedural issues. The BIA spent a paragraph in its decision discussing the facts that the IJ never even discussed, dealing with the one-year bar, the procedural issue, and the main reason for exhaustion is to allow the agency a chance to pass and to correct its mistakes. And clearly here, the record shows that the BIA had that opportunity as it recited those facts and touched on the issue in its decision. It did roll on the issue, that's right. If there's no further questions, we would like to... All right. Thank you very much. I really want to commend the University of Irvine. This is Irvine, right? Law School. And wasn't Irvine on Bringus-Rodriguez too? Yes, that brief was also filed by, I think, your dean, correct? Well, thank you very much. We appreciate your taking this case on pro bono, and thank you, counsel. You did an excellent job too. Thank you.
judges: Wardlaw, Callahan, Kendall